The Musselman Hub-Brake Company, a corporation v. Commissioner. A. J. Musselman v. Commissioner.
Musselman Hub-Brake Co. v. Commissioner
Docket Nos. 108899, 108900.
United States Tax Court
1942 Tax Ct. Memo LEXIS 93; 1 T.C.M. (CCH) 81; T.C.M. (RIA) 42593; November 10, 1942
*93 Wayland K. Sullivan, Esq., for the petitioners. W. W. Kerr, Esq., for the respondent. HILL Memorandum Opinion HILL, J.: These are consolidated proceedings for the redetermination of deficiencies in income and excess profits taxes as follows: Deficiencies
Excess-Profits
Docket No.
Petitioner
Year
Income Tax
Tax
108899
The Musselman Hub-Brake Company
1937
$2,601.99
$ 238.47
1938
1,504.23
281.44
1939
3,880.18
1,763.40 *
108900
A. J. Musselman
1938
1,371.75
1939
1,914.98
In the case of The Musselman Hub-Brake Company, Docket No. 108899, the issue is whether petitioner is entitled to deduct as business expense the amounts of certain promissory notes issued within two and one-half months after the close of each taxable year, to its president, for royalties and interest accrued in each year. [The Facts] Petitioner is a corporation organized under the laws of Ohio, with its principal office at Cleveland. Its returns for the years here involved were filed with the collector for the 18th district of Ohio. A. J. Musselman, who was the owner of certain patents, organized petitioner *94 corporation as a sales agency in 1931. He advanced funds to it, and on September 1, 1931, the corporation issued to him three promissory notes, each bearing interest a six percent per annum, in the aggregate amount of $13,351. In 1936 Musselman granted the corporation a license under his patents, and the royalty accruals disallowed by respondent arose thereunder. On March 1, 1938, the corporation executed a promissory note payable on demand to Musselman in the principal sum of $9,795.44, with interest at six percent. This note represented royalties accrued in 1937 in the amount of $8,994.44, and interest accrued in 1937 in the amount of $801. On February 23, 1939, the corporation issued its demand note to Musselman in the principal sum of $11,241.79, with six percent interest, representing royalties accrued in 1938 of $9,950.99 and interest in the amount of $1,290.80. On February 20, 1940, the petitioner corporation executed a demand note payable to Musselman in the principal sum of $17,811.61, with interest at six percent, representing royalties accrued in 1939 in the amount of $15,847.61, and interest accrued in the amount of $1,964. The interest items above set out, which constituted *95 the interest deductions disallowed by respondent, represent interest accrued in part on the notes executed in 1931, and in part on the notes executed in subsequent years. The notes executed in 1938, 1939 and 1940, were paid on November 30, 1940, and the notes executed in 1931 were paid on December 31, 1940. At all times material here, Musselman was president of the corporation and in complete control of its affairs, owning 96 percent of its outstanding capital stock. The average bank balance of petitioner corporation for December 1937 was $16,139, and its average bank balance for the months of October, November and December 1937, was $16,165; its average balance for the month of March 1938 was $7,729, and its average balance for the year 1938 was $13,683.66. The corporation's average bank balance for the month of February 1939 was $17,307, and its average balance for the year 1939 was $22,292.91. Its average bank balance for the month of February 1940 was $9,291, and its average balance for the year 1940 was $29,819.58. The corporation's balance sheets disclose that at the end of the years 1937, 1938 and 1939 it owned United States Government bonds in amounts in excess of $7,500. *96 Its merchandise inventories at December 31, 1937 and 1938 amounted to more than $35,000, and its inventory at the close of 1939 exceeded $77,000. During all of the taxable years, petitioner corporation was a solvent going concern, and the notes executed by it, described herein above, were at all times prior to payment worth face value. The corporation kept its records and made its income tax returns on an accrual basis. Musselman made his individual income tax returns on the basis of cash receipts and disbursements. The corporation claimed in its return for each of the taxable years deductions for the royalties and interest accrued in each of such years, which deductions were disallowed by respondent. The amounts of royalties and interest represented by each of the several promissory notes executed by the corporation were reported by Musselman in his individual income tax return for the year in which each such note was received by him. It was the intention of Musselman that the notes should constitute payment of the accrued royalties and interest represented by each note. Prior to 1938, it had been the practice of the corporation to credit to Musselman's personal account all royalties *97 and interest accrued, and charge all withdrawals against such account. Some time in February 1938 the vice-president of the corporation was informed by its auditor that deductions for the royalties and interest accrued in 1937 and credited to Musselman's account would not be allowable to the corporation for income tax purposes unless paid to Musselman by March 15, 1938. Musselman thereupon decided to have the corporation pay the royalties and interest accrued in 1937 through issuance of the demand note dated March 1, 1938. The same practice was followed in the subsequent taxable years. [Opinion] Respondent disallowed the deductions in controversy pursuant to section 24 (c), Revenue Act of 1936, (as amended by section 301, Revenue Act of 1937), Revenue Act of 1938 and Internal Revenue Code. [1] Sub-paragraphs (1), (2) and (3) of the statute are in the conjunctive, and it must appear that all three are applicable under the facts before respondent's disallowance of the claimed deductions can be sustained. No contention is made by either party that sub-paragraphs (2) and (3) are not applicable if sub-paragraph (1) is applicable. We need to consider, therefore, only the applicability *98 of sub-paragraph (1). Petitioner argues that sub-paragraph (1) is not applicable, for the reason that, since Musselman, acting for himself in accepting the notes and for the corporation in causing it to execute the notes, intended that the notes should constitute full and final payment for *99 the accrued royalties and interest, the corporation's liability in that regard was thereby extinguished; in other words, that since the notes were worth face value, they were the equivalent of cash, and since they were so intended to be they did in fact constitute payment for the royalties and interest within two and one-half months after the close of the taxable year. Hence, the deductions should be allowed. Respondent contends on the other hand that the notes did not constitute payment within the meaning of the statute; that the only change effected with respect to Musselman's account on the corporation's books was merely to convert an account payable into notes payable. In Celina Manufacturing Company, 47 B.T.A. 967, we considered precisely the same question as is presented here, and held, on similar facts, that the notes did not constitute payment within section 24 (c); that the conditions of sub-paragraphs (1), (2) and (3), coexisted, and that the claimed deductions should be denied. On authority of that decision, respondent's action in Docket No. 108899 of the present proceedings is approved. In the case of A. J. Musselmann, Docket No. *100 108900, the issue is whether petitioner is entitled to deductions for depreciation of patents and royalty rights. Petitioner was the owner of certain patents and royalty rights in respect of which he claimed a deduction for depreciation in his income tax return for each of the taxable years 1938 and 1939 upon the basis of a valuation of $200,000. These deductions were disallowed by respondent and the amounts added back to income. Petitioner alleged in his petition that "he had spent approximately $50,000.00 in developing and patenting the particular design and features covered by said patents", and further that the value of the patents and his right to royalties was $200,000. Both of these allegations were denied in respondent's answer. At the hearing no evidence was offered to establish the cost of the patents or royalty rights. Petitioner volunteered the statement that "I would judge $50,000 would be acceptable, if I wanted - if I ever set that up", apparently meaning thereby that if he had set up a cost basis of $50,000 upon his books, he thought such amount probably would be acceptable to the taxing authority as a basis for depreciation. However, he made no estimate nor *101 expressed any opinion as to the minimum or actual cost of the patents or royalties. In respect of the value of the patents in the taxable years, petitioner testified that his auditor appraised their value at $250,000 and that he, petitioner, had reasons of knowing himself as to why the value was $200,000; that he was offered the round sum of $200,000 for the patents by the Winchester Arms Company in January 1936. It also appears from the record that in January 1941 petitioner sold 240 shares, and his son sold 10 shares, of the capital stock of The Musselman Hub-Brake Company (being all of that company's outstanding stock) to Sears, Roebuck & Company for a total price of $30,205.34. On the same date, petitioner granted a new license to The Musselman Hub-Brake Company covering the patents involved here, and certain other patents, and granted the licensee an option to purchase such patents at a price equal to $220,000, less the aggregate of all royalties paid to the licensor under the agreement. On brief petitioner states that he used the sum of $200,000 as a basis for depreciation because, the actual cost figures being unavailable, it represented the value of the patents as of January *102 1, 1938. In support of his contention that value may be used in lieu of cost in computing depreciation allowances on patents, when cost can not be established, petitioner relies solely upon the decision of the United States Circuit Court of Appeals for the Sixth Circuit in Nachod & U.S. Signal Co. v. Helvering, 74 Fed. (2d) 164, (14 AFTR 819). The cited case, we think, is not in point. There the question was whether a corporation was entitled to deductions on account of exhaustion of certain patents which it had acquired in exchange for shares of its capital stock. It had not acquired the patents from the Government, and apparently its basis for exhaustion or depreciation deductions was cost, but since it had acquired the patents in exchange for its stock, cost was in effect the value of the stock, which in turn was the same as the value of the patents. We find nothing in the cited decision to support petitioner's theory that a taxpayer, who obtains a patent from the Government may substitute value of the patent at the beginning of the taxable year in lieu of cost, where it is not shown that value and cost are the same, as a basis for *103 computing deductions for exhaustion. In respondent's Regulations 103, issued under the Internal Revenue Code, section 19.23 (1)-7, it is provided that, In computing a depreciation allowance in the case of a patent or copyright, the capital sum to be replaced is the cost or other basis of the patent or copyright. * * * If the patent or copyright was acquired from the Government, its cost consists of the various Government fees, cost of drawings, experimental models, attorneys' fees, development or experimental expenses, etc., actually paid. * * * Petitioner argues that where the cost of a patent is not ascertainable, the phrase "other basis" used in the regulation should be interpreted as embracing the reasonable value of the patent, but he cites no authority other than the decision above referred to and discussed. Section 114 (a) of the Revenue Act of 1938 and of the Internal Revenue Code provides that the basis upon which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in section 113 (b) for the purpose of determining the gain upon the sale or other disposition of such property. Section 113 (a) (unadjusted *104 basis) provides that the basis of property shall be the cost of such property, with exceptions not material here. Subsection (b) defines adjusted basis as the basis determined under subsection (a), adjusted as therein provided. Respondent's regulations, we think, correctly interpret the statute in so far as it relates to a depreciation allowance in the case of a patent, and it is obvious that the term "other basis" as used in the regulation refers to the other bases provided in section 113, none of which has any application in the present case. Since petitioner has not shown that he is entitled to use any basis other than cost and has failed to prove a cost basis, the deductions claimed are not allowable. Charles J. Thatcher, 24 B.T.A. 1130. Respondent's determination in Docket No. 108900 is approved. Decisions will be entered for respondent. Footnotes
*. Declared value excess-profits tax.↩
1. SEC. 24. ITEMS NOT DEDUCTIBLE * * * * *
(c) Unpaid Expenses and Interest. - In computing net income no deduction shall be allowed under section 23 (a), relating to expenses incurred, or under section 23 (b), relating to interest accured - (1) If such expenses or interest are not paid within the taxable year or within two and one-half months after the close thereof; and (2) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and (3) If, at the close of the taxable year of the taxpayer or at any time within two and one-half months thereafter, both the taxpayer and the person to whom the payment is to be made are persons between whom losses would be disallowed under section 24 (b).↩